

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2004

# Togbah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1753

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Togbah v. Atty Gen USA" (2004). *2004 Decisions.* Paper 517.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/517

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1753

TARRION MORCOLOR TOGBAH

v.

John Ashcroft, UNITED STATES ATTORNEY GENERAL;
IMMIGRATION & NATURALIZATION SERVICE;
JAMES W. ZIGLAR, I.N.S. Commissioner;
ANDREA QUARANTILLO, District Director I.N.S. Newark;
LORI VALVERDE, Assistant I.N.S. District Director for
Detention and Deportation;
RALPH GREEN, Warden, Hudson County Correctional Center,
Appellants

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-05565)
District Judge:  Honorable John W. Bissell, Chief Judge

Argued February 23, 2004

Before:  RENDELL, BARRY and ROSENN, <u>Circuit</u> <u>Judges</u>.

(Filed:  July 8, 2004)

Colette R. Buchanan
Office of the U.S. Attorney
970 Broad Street, Room 700
Newark, NJ  07102

Donald E. Keener
Alison R. Drucker    **[ARGUED]**
U.S. Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC  20044
   *Counsel for Appellants*

E. James Mullaly, III    **[ARGUED]**
Mullaly & Diefenbach
2109 Pennington Road
Ewing, NJ  08638
   *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Like a pendulum, Tarrion Togbah's fate has swung back and forth as his request for a waiver of inadmissibility has made its way through the necessary administrative and judicial channels.  While his application for adjustment of status was pending, Togbah became ineligible for the adjustment by virtue of a robbery conviction that rendered him inadmissible.  At issue is Togbah's qualification for a waiver of inadmissibility under 8 U.S.C. § 1159(c), which allows the Attorney General to waive many of the grounds for inadmissibility enumerated in 8 U.S.C. § 1182(a).[1]

---

[1]The Government contends that the District Court lacked jurisdiction to review the claims asserted by Togbah in this case on a habeas petition because Togbah's challenges are directed at acts committed to the discretion of the IJ, acting as a designee of the

2

The Immigration Judge ("IJ") granted Togbah's request for waiver on the basis of assuring family unity, one of the considerations listed in § 1159(c). The Board of Immigration Appeals ("BIA") reversed the IJ's grant of waiver, largely based upon the opinion of the Attorney General in In re Jean, 23 I. & N. Dec. 373 (A.G. 2002), which highlighted the importance of the seriousness of the alien's offense in the agency's consideration of such waiver requests. The District Court vacated the BIA's order based on its view that the Attorney General had overstepped his bounds by emasculating the statutory considerations and adding offenses to the list of convictions that will render an alien ineligible for waiver. Accordingly, the District Court granted Togbah's habeas petition and remanded to the BIA for consideration of the waiver issue under the standard that existed prior to the Attorney General's decision.

On appeal, we fear that the pendulum must swing back once again, as we disagree with the District Court and conclude that the BIA did not err in its decision to consider Togbah's waiver in light of the policy regarding waiver in cases of violent crimes,

---

Attorney General. We conclude that the District Court did have jurisdiction because where, as here, statutory limits are placed upon an IJ's discretionary power – specifically, an IJ can only grant waiver for the reasons set forth in § 1159(c) – the legal aspects of that determination are properly explored in habeas proceedings. Bakhtriger v. Elwood, 360 F.3d 414, 424 (3d Cir. 2004); cf. Spencer Enters., Inc. v. United States, 345 F.3d 683, 690 (9th Cir. 2003) (discussing federal jurisdiction to review acts of discretion guided by statutory standards in the context of appeals under 8 U.S.C. § 1252(a)(2)(B)(ii)). Thus, the District Court properly found that it had jurisdiction over Togbah's petition under 28 U.S.C. § 2241, and we have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291.

articulated by the Attorney General in <u>Jean</u>. However, we believe that further proceedings are necessary before the agency because Togbah did not have the opportunity at his initial hearing to address the Attorney General's opinion in <u>Jean</u> or to attempt to meet the heightened evidentiary standard it created. Therefore, while we disagree with the District Court's rationale, we find that the grant of the writ of habeas corpus is necessary to remedy the deficiencies, from a due process standpoint, caused by the BIA's application of <u>Jean</u> without giving Togbah an opportunity to meet its heightened evidentiary standard. Accordingly, we will instruct the District Court to remand the matter to the BIA in order to give Togbah a chance to meet the <u>Jean</u> standard.

## I.

Togbah is a 25-year-old native of Liberia. His father, after serving as a government official in Liberia for several years, entered the United States in April of 1995. After being granted asylum the following October, his father petitioned to have the rest of his family join him in the United States. That petition was granted in December of 1995, and Togbah arrived in the United States with his mother and his four siblings in August of 1996. Upon his arrival, he was granted temporary derivative asylum status under 8 U.S.C. § 1158(b)(3), and that status was to be valid until August 22, 1997.

When his asylum status was about to expire, Togbah filed an application seeking to adjust his immigration status to that of an alien lawfully admitted for permanent

residence.  <u>See</u> 8 U.S.C. § 1159; 8 C.F.R. § 1209.2.  Togbah then waited to be contacted for examination by the Immigration and Naturalization Service ("INS"),[2] in order for the INS to determine whether he was admissible and thereby eligible for a change to lawful permanent resident status.  In August of 1998, when Togbah was 20 years old, he was arrested in New Jersey.  He pled guilty to conspiracy to commit armed robbery and was sentenced to five years in prison.

The incident leading to his arrest and conviction involved an armed robbery and is described at various places in the record.  Togbah was in a car with three of his friends when they decided to commit a robbery to obtain money for gas.  They followed a woman in her car, and, when she parked in her driveway, two of Togbah's friends got out of the car to rob her.  One carried a BB gun, and the other had a baseball bat.  They took money from her and assaulted her, hitting her with the bat and the gun.  Then the two young men returned to the car, leaving the woman on the ground, and they drove away.  Togbah did not physically participate in the robbery or the assault, nor did he attempt to prevent it; he simply stayed in the car with the fourth young man.  When his friends drove away, Togbah did not know the extent of the victim's injuries, but he did not call for help.  The arrest that followed was Togbah's first.

---

[2]Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296 § 451, 116 Stat. 2135, 2195 (2002) (codified at 6 U.S.C. § 271 (2003)), the functions of the INS were transferred to various bureaus within the Department of Homeland Security.  Because of the status of the agency at the time the proceedings in this case began, and for ease of reference, we will continue to refer to the agency as the INS.

Togbah was incarcerated at a youthful offender facility in New Jersey, and was released on probation after serving two and a half years of his sentence. While incarcerated, Togbah had no disciplinary infractions. Despite the fact that his conviction rendered him inadmissible and ineligible for adjustment of status, Togbah renewed his request for admission as a lawful permanent resident before an IJ. Togbah sought a discretionary waiver of his inadmissibility under 8 U.S.C. § 1159(c), urging that he should be permitted to remain in the United States based on unusual hardship arising out of his family circumstances. Around the same time, the INS filed a Notice to Appear and initiated removal proceedings.

In late March of 2001, Togbah appeared before an IJ, conceded that his conviction rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i), and sought discretionary waiver of inadmissibility. The IJ agreed to entertain the waiver request and scheduled hearings on the matter. Togbah was taken into custody for the duration of his proceedings. While these proceedings were pending, the INS unsuccessfully attempted to terminate them based on procedural concerns related to the fact that Togbah's asylum status had not been finally terminated prior to the filing of the Notice to Appear.

The IJ held extensive hearings on the merits of the waiver issue. Togbah and his parents testified; the INS called no witnesses. Togbah described the facts surrounding his arrest in a manner consistent with the police reports and his Presentence Report. His parents testified that Togbah has no family remaining in Liberia, and that he does not

6

speak any of the languages that are spoken there. His father is a permanent U.S. resident and has been married to Togbah's mother for over twenty-seven years. Two of Togbah's four siblings attended the hearing. None of his siblings have ever been arrested. His parents testified that they regret what happened, and that they would provide a loving and supportive environment for Togbah in their Philadelphia home if he were released and allowed to stay in the United States.

Togbah also offered documentary evidence, including letters from family, friends, and the Director of Social Services at the youthful offender facility where he served his sentence, as well as certificates of completion from behavior modification programs that he completed while at the facility. The INS offered the Presentence Report that had been prepared when Togbah pled guilty and was sentenced in 1998.

Based on all of the evidence presented to him, the IJ granted Togbah's request for waiver of inadmissibility in a written opinion filed in January of 2002. The IJ explicitly recognized the extraordinary nature of waiver, but found that it was appropriate for Togbah in order to serve a purpose listed by Congress in the relevant statute, namely, "to assure family unity." 8 U.S.C. § 1159(c). According to the IJ, family unity was particularly compelling in Togbah's case due to his "strong family unit," the sincerity of his parents, and his lack of any connections in Liberia. In the IJ's view, these factors outweighed the seriousness of Togbah's criminal conduct and rendered his case sufficiently extraordinary to warrant granting waiver. The IJ entered an order granting

7

waiver, adjusting Togbah's status to lawful permanent resident, and ordering his immediate release from custody.[3]

The INS appealed the IJ's order to the BIA, and Togbah remained in custody while the appeal was pending. Togbah sought a bond hearing, but the IJ denied the request, finding that Togbah was considered to be an "arriving alien" under 8 C.F.R. § 1001.1(q) once his asylum status ended. This subjected him to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), and the IJ believed he could not re-examine the INS's decision to hold Togbah in custody. See 8 C.F.R. § 1003.19(h)(2)(i)(B). Pursuant to 8 C.F.R. § 1003.1(a)(7), the BIA affirmed the IJ's custody determination without issuing an opinion.

In July of 2002, the BIA issued an opinion reversing the IJ's grant of waiver, citing an intervening decision of the Attorney General as the basis for its reversal. See In re Jean, 23 I. & N. Dec. 373 (A.G. 2002). The BIA viewed Jean as requiring it to balance the evidence offered by Togbah in support of the statutory considerations and those factors listed in Jean against the nature of his offense, essentially resulting in the application of a heightened burden of proof in the case of an alien seeking waiver after being convicted of a serious crime. Focusing on the violent nature of Togbah's offense, the BIA determined that none of the mitigating considerations served to overcome the

---

[3]Because he adjusted Togbah's status, it was unnecessary for the IJ to consider Togbah's claim that he would be eligible for relief from removal under the Convention Against Torture ("CAT").

8

seriousness of his crime.  Thus, the BIA ordered Togbah removed to Liberia.[4]  In

November of 2002, just prior to his scheduled removal, Togbah filed a petition seeking

habeas corpus relief in the United States District Court for the District of New Jersey, and

his removal was stayed pending the resolution of the habeas proceedings.

In an opinion dated December 20, 2002, the District Court vacated the BIA's

removal order.  The Court made three determinations, two of which are challenged on this

appeal by the INS.  First, the Court concluded that Togbah should have been afforded an

individualized bond hearing because, based on an explicit provision of 8 C.F.R. §

1001.1(q), Togbah's arrival date excludes him from the subsequently-enacted mandatory

detention provision for arriving aliens.  Thus, the Court applied our decision in <u>Patel v.

Zemski</u>, 275 F.3d 299 (3d Cir. 2001), and held that Togbah was entitled to the type of

individualized bond hearing that would be accorded to any other admitted, removable

alien who was pursuing his administrative remedies.

Second, the Court decided that the Attorney General, in his <u>Jean</u> opinion,[5] had

"overstated his discretionary role and encroached upon powers granted only to Congress."

---

[4]Togbah also asserted his claim for CAT relief before the BIA, but the BIA deemed the claim waived.  The District Court subsequently determined that the claim was not actually waived, and the INS conceded that the BIA erred in that respect.  This issue is not before us now, so in addition to the issues we explore in this opinion, Togbah will also be permitted to pursue his CAT claim following our remand.

[5]The Attorney General, using the power granted to him in 8 C.F.R. § 1003.1(h)(1)(i), directed the BIA to refer <u>Jean</u> to him for review after the BIA considered the case and rendered a decision.  <u>See Jean</u>, 23 I. & N. Dec. at 373-74.

9

This conclusion flowed from the District Court's reading of <u>Jean</u> as essentially legislating by adding to § 1159(c) a new type of conviction that renders an alien ineligible for waiver, despite what the Court viewed as a clear statement by Congress that waiver should only be categorically denied in cases involving the four types of crimes specifically enumerated in the statute. The Court vacated Togbah's removal order and remanded the matter to the BIA for reconsideration of the waiver issue.

Lastly, the Court determined that Togbah should be permitted to pursue a claim for relief from removal under the CAT, if such a claim became necessary. Thus, the District Court granted a writ of habeas corpus and remanded on all three issues. The Government appeals the first two determinations of the District Court, both of which we will explore fully below.[6]

## II.

We begin with the language of the waiver statute. 8 U.S.C. § 1159(c) states that "the Attorney General may waive any other provision of [the section of the INA

---

[6]We review de novo a district court's decision to grant a habeas corpus petition. <u>Duvall v. Elwood</u>, 336 F.3d 228, 229 (3d Cir. 2003). The issues presented by Togbah's petition are purely legal in nature, and they require us to examine the application of statutory provisions contained in the Immigration and Nationality Act ("INA"). Because the INS is charged with administering those statutes, we will defer to the agency's reasonable interpretation of them in the event that the statutes are silent or ambiguous with respect to the issues before us. <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 424 (1999); <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984).

10

delineating categories of inadmissible aliens] . . . with respect to such an alien [seeking adjustment of status] for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." The statute explicitly removes from eligibility those aliens convicted of certain offenses, including trafficking in controlled substances, espionage, and terrorist activities. 8 U.S.C. § 1159(c). Thus, Togbah was eligible to request waiver, as his crime is not specifically excluded by the statutory language.

The language of the statute plainly indicates that if a waiver is granted, it must be based on those aspects listed in the statute, namely, family unity, humanitarian concerns, and the public interest. Id. In other words, although Congress has placed the decision of whether to grant waiver within the discretion of the Attorney General and his designees (including IJs), the grant of discretionary power is not absolute. An IJ would surely run afoul of the congressional directive if he granted a waiver for reasons other than those set forth in the statute, or in a case lacking any facts bearing on the enumerated considerations.

On the other hand, where an IJ finds compelling facts related to one of the statutory considerations, the statute's language regarding the grant of waiver does not compel a certain result. Section 1159(c) states that waiver "may" be granted, rather than that it "shall" be granted, in appropriate cases. So once a case is deemed appropriate – based on humanitarian concerns, for example – the statute grants the Attorney General (or the IJ, acting as his designee) the discretion to decide whether or not to waive in that case.

11

Thus, it appears to be within the discretion of the IJ to first assess how compelling the facts of a given case are with respect to the statutory considerations, and to then consider any relevant countervailing factors in order to reach a determination regarding waiver.

In Jean, the Attorney General added the violence or dangerousness of the offense as a factor to be considered in the weighing process under § 1159(c), directing the agency to balance the "claims of hardship to the respondent's family against the gravity of her criminal offense." Jean, 23 I. & N. Dec. at 383. In doing so, he created a heightened standard for cases of aliens who are inadmissible due to their convictions for crimes of violence. Id. He articulated the test as follows:

> It would not be a prudent exercise of the discretion afforded to me by this provision [§ 1159(c)] to grant favorable adjustments of status to violent or dangerous individuals except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, such a showing might still be insufficient. . . . For those aliens . . . who engage in violent criminal acts during their stay here, this country will not offer its embrace.

Id. at 383-84.

The District Court held that, in Jean, the Attorney General had exceeded his power. First, the Court found that by focusing on serious crimes as generally rendering the petitioner ineligible, Jean added a category of crimes to those enumerated in the statute as convictions that will render an alien ineligible for waiver. Second, the Court viewed Jean as essentially changing the considerations upon which the agency could rely

12

in granting a request for waiver from those listed in the statute to those listed by the Attorney General.

We disagree. By articulating additional factors aimed at implementing agency policy, the Attorney General has neither added a class of aliens to those who are statutorily ineligible for waiver, nor has he instructed the BIA to ignore the statutory considerations of family unity, humanitarian concerns, and public interest. Thus, we conclude that as long as the Attorney General's decision in <u>Jean</u> was not arbitrary or capricious, it is a permissible exercise of his statutory discretion in enhancing the waiver standards for a class of applicants, namely, those convicted of "dangerous and violent" crimes. <u>See</u> <u>INS v. Yang</u>, 519 U.S. 26, 31 (1996). Thus, the BIA could have been – and, indeed, should have been – guided by the Attorney General's decision in <u>Jean</u> as it considered Togbah's request for waiver.

We conclude that the BIA properly employed the policy articulated in <u>Jean</u>, while also applying the considerations that are relevant according to the statute. The BIA recognized the seriousness of Togbah's conviction, stating that "although the respondent did not actually beat the victim or carry the gun, he assisted in the commission of a violent act by his knowledge and his silence." Thus, the BIA stated its view that "the adverse factors in [Togbah's] case [were] considerable." However, the opinion makes it clear that the BIA looked past the criminal conduct and considered facts relevant to the statutory considerations as well. Specifically, the BIA recognized that there were facts

13

indicating that "family unity" was a particular concern in Togbah's case, noting that his removal would "impose a strain on his family" and cause him hardship upon his return to Liberia. The BIA, relying on the administrative record made before <u>Jean</u> was published, declined to grant the waiver.

Nonetheless, it would be unfair to Togbah if we were to permit the Attorney General to announce a new policy and change the evidentiary burden in cases like his midstream, without providing him with an opportunity to meet the heightened burden. As we have indicated, Togbah asserted an argument with respect to family unity throughout the administrative process, and the Immigration Judge was persuaded by his evidence related to that factor. However, it is not clear whether Togbah advanced other arguments, which may now be necessary in order to overcome the purported violent nature of his crime. For example, he may wish to offer further evidence regarding his level of participation in the robbery, evidence related to humanitarian concerns and the public interest, or further facts that would show that his hardship, if deported, is extremely unusual, in order to meet the new policy announced in <u>Jean</u>. Since the balance has changed as a result of <u>Jean</u>, we think it only fair that Togbah have the opportunity to adduce additional evidence or argument, should he wish to do so, in support of his request for waiver. <u>See</u> <u>Singh v. INS</u>, 213 F.3d 1050 (9th Cir. 2000) (finding a due process violation and remanding where the court determined that the BIA had created a new standard in Singh's case and then applied it to him without giving him a chance to meet

14

it); <u>Arrieta v. INS</u>, 117 F.3d 429 (9th Cir. 1997) (remanding where the IJ applied a presumption announced in an agency decision that was filed after Arrieta's relevant submissions without giving Arrieta a chance to offer evidence to rebut the new presumption).

Therefore, while we disagree with the District Court's conclusion regarding the BIA's application of <u>Jean</u> in general, we are persuaded that a remand is necessary in order to prevent the injustice that would arise if a subsequently announced policy formed the basis for the denial of Togbah's waiver request.

## III.

The Government also challenges the District Court's order requiring the BIA to hold an individualized bond hearing for Togbah.[7] The District Court based its conclusion that Togbah was not subject to mandatory detention on our decision in <u>Patel v. Zemski</u>, 275 F.3d 299 (3d Cir. 2001). There, we determined that 8 U.S.C. § 1226(c), the mandatory detention statute applicable to both Patel and Togbah, was unconstitutional.

[7]Preliminarily, we reject Togbah's argument that we lack jurisdiction to consider the bond issue. Togbah asserts that the question is moot, due to the fact that the INS has voluntarily released him from custody. A careful review of the procedural history relevant to this issue persuades us that his release was based on the District Court's order vacating the BIA's order, which was the only administrative or judicial action mandating Togbah's detention. In other words, the District Court's decision regarding bond left the INS without a basis for keeping Togbah in custody. We have jurisdiction to review that decision, as the Government asserts before us that, in fact, it does have the statutory authority to detain Togbah. Thus, the issue is not moot.

15

However, after the District Court filed its opinion in this case, but before the parties filed their briefs on appeal, the Supreme Court issued its opinion in Demore v. Kim, 538 U.S. 510 (2003), abrogating our decision in Patel and upholding the constitutionality of the mandatory detention statute. We find no basis for distinguishing Demore or creating an exception to its holding for Togbah. Accordingly, we are compelled to reverse the District Court's ruling regarding the bond hearing and conclude that Togbah may be detained for the duration of his proceedings without an individualized hearing.

IV.

Because we view the BIA's application of Jean to Togbah's case as implicating due process concerns, as he was not provided with a chance to address the heightened standard, we conclude that there is a basis for granting the habeas relief sought by Togbah. Therefore, we agree with the District Court that habeas should be granted so as to require a remand to the BIA for further proceedings. Accordingly, we will AFFIRM the ultimate order of the District Court – namely, the order granting the writ of habeas corpus – but we do so for different reasons. We will REMAND to the District Court, instructing that the matter should be remanded to the BIA with directions to remand to the IJ for further proceedings consistent with this opinion. The stay of removal will remain in effect pending completion of the proceedings aforesaid.

16