United States Court of Appeals
Fifth Circuit

**F I L E D**

June 9, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-31052

MELANIE BEAUCEJOUR JEAN,

Petitioner – Appellant,

v.

ALBERTO R. GONZALES;
JAMES W. ZIGLAR;
ANDREA QUARANTILLO;
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT;
UNITED STATES  DEPARTMENT OF JUSTICE,

Respondents – Appellees.

Petition for Review of a Decision
of the Attorney General of the United States

Before KING, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Petitioner-Appellant Melanie Beaucejour Jean appeals from the district court's denial and dismissal of her habeas corpus petition for lack of jurisdiction.  Jean filed the habeas petition in response to the Attorney General's denial of her petition for discretionary relief from an order of inadmissibility.  For the reasons set forth below, we convert this appeal into a petition for review and deny the petition.

## I.   FACTUAL BACKGROUND & PROCEDURAL POSTURE

Petitioner-Appellant Melanie Beaucejour Jean, a native of

Haiti, entered the United States in 1994 along with her husband and children. Jean was convicted in New York state court in 1995 of manslaughter in the second degree in connection with the death of a child entrusted to her care. She was sentenced to a term of imprisonment of two to six years and was released in March 1999. Immigration officials arrested Jean in June 1999 and initiated removal proceedings against her the next month.

In response, Jean applied for discretionary relief, requesting the following: adjustment of her status as a refugee pursuant to 8 U.S.C. §§ 1157, 1159 (2000); asylum pursuant to 8 U.S.C. § 1158; withholding of removal pursuant to 8 U.S.C. § 1231; and deferral of removal pursuant to the Convention Against Torture, implemented by 8 C.F.R. §§ 208.16-208.18. An immigration judge ("IJ") ruled that her second-degree manslaughter conviction constituted an "aggravated felony" which rendered her ineligible for all relief from removal. Jean appealed to the Board of Immigration Appeals ("BIA" or "Board"), which reversed the IJ's decision. The Board concluded that Jean's conviction did not amount to a "crime of violence," the necessary predicate for classifying the offense as an "aggravated felony" in this context. The Board remanded to give Jean another opportunity to apply for relief from removal.

On remand, after conducting several evidentiary hearings, the IJ again denied Jean's requests for relief. Jean subsequently appealed to the Board. It again reversed the IJ, after weighing "the equities" against Jean's criminal conviction, and "chastised"

2

the IJ for failing to adhere to the Board's earlier ruling that Jean's manslaughter conviction did not represent a "crime of violence."

Pursuant to 8 C.F.R. § 3.1(h)(1)(I), then Attorney General John Ashcroft directed the Board to refer the case to his office for review. The Attorney General issued a decision reversing the Board, holding that "the interests of [Jean's] family and the general public would be ill-served by granting her lawful permanent residency" and concluding that she was "not entitled to any alternative relief from removal." *In re Jean*, 23 I. & N. Dec. 373, 374 (A.G. 2002). The Attorney General stated that the balance between "claims of hardship to the respondent's family against the gravity of her criminal offense . . . . will nearly always require the denial of a request for discretionary relief from removal where an alien's criminal conduct is as serious as that of the respondent."

Having exhausted her administrative remedies, Jean filed the habeas petition from which this appeal was taken in July 2002, asking for an immediate stay of her removal and one or all of the following: an adjustment of her status to that of a lawful permanent resident, a grant of asylum, or reversal of the order of removal. On June 3, 2002, Jean was removed to Haiti, making her request for a stay of removal moot.

Jean raised several arguments in her original habeas petition;

3

however, she maintains only her ultra vires claim on this appeal. In her petition, she claimed that the Attorney General's decision was ultra vires for two reasons. First, she argued that the Attorney General attached additional requirements never contemplated by Congress to requests for adjustment of status filed pursuant to 8 U.S.C. § 1159(c). Second, she argued that the Attorney General's decision effectively rewrote the "aggravated felony" asylum limits of 8 U.S.C. § 1158, establishing a per se rule in place of Congress's guided discretion.

Jean's habeas petition was referred to a magistrate judge, who recommended denial and dismissal of Jean's habeas petition. The magistrate judge relied upon this Court's holding in *Bravo v. Ashcroft*, 341 F.3d 590, 592 (5th Cir. 2003), that "[a]lthough federal courts retain habeas jurisdiction to review statutory and constitutional claims, there is no jurisdiction to review denials of discretionary relief" under the limitations of 8 U.S.C. § 1252(a)(2)(B). After reviewing Jean's petition, the magistrate judge concluded that her constitutional and ultra vires claims were meritless and recommended dismissal of her petition with prejudice.

The district court adopted the magistrate's report and denied and dismissed Jean's habeas petition for lack of jurisdiction. The court also expanded upon the magistrate judge's discussion of the jurisdictional issues. After analyzing the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 310-14 (2001), this

4

Court's decisions in *Bravo* and *Flores-Garza v. INS*, 328 F.3d 797 (5th Cir. 2003), and relevant decisions from other circuits, the court concluded that "*St. Cyr* and its progeny indicate Jean has no constitutional due process claim relating to the attorney general's discretionary denial of relief." In one sentence, the district court held that Jean had failed to cite a statutory violation. Jean timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review legal determinations of jurisdiction in this context *de novo*. *Bravo*, 341 F.3d at 591.

### B. Jurisdiction To Consider Jean's Ultra Vires Claim

Before reaching the merits of Jean's claim, we must decide whether jurisdiction exists over Jean's ultra vires claim. To do so, we examine two different issues: (1) whether Jean's claim is in the context of a habeas petition or a petition for review and (2) whether the Attorney General's discretionary decision is subject to judicial review.

This case is governed by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (May 11, 2005) (the "Act"). "The Act amends the jurisdictional provisions of the Immigration and Nationality Act, altering the way in which noncitizens can seek judicial review of administrative orders of removal. Section 106

5

of the REAL ID Act has divested federal courts of jurisdiction over § 2241 petitions attacking removal orders, effective immediately and retroactively." *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735-36 (5th Cir. 2005) (per curiam), *cert. denied*, 126 S. Ct. 1055, 163 L. Ed. 2d 882 (2006). The Act requires district courts to transfer any pending habeas cases to the appropriate court of appeals, which shall treat the transferred case as if it had been filed pursuant to a petition for review. *Id.* at 736. Congress, however, was silent on habeas petitions, such as this one, that were already on appeal when the Act became effective. *See id.* We have held that such habeas petitions are converted into petitions for review. *Id.* Having established the form of this petition, we determine whether it is subject to judicial review.

Generally, the Act prohibits courts from reviewing a discretionary decision of the Attorney General under 8 U.S.C. §§ 1151, *et seq.* 8 U.S.C. § 1252(a)(2)(B)(ii). This general rule includes 8 U.S.C. § 1159(c)—the provision under which Jean applied for an adjustment of status. *Id.* The Act, however, further provides that judicial "review of constitutional claims or questions of law" is not prohibited. 8 U.S.C. § 1252(b)(2)(D). Therefore, although her claim ordinarily would not be reviewable by a court, Jean's claim may be reviewed if she raises a constitutional claim or a question of law. Here, Jean raises a

6

question of law—a claim of ultra vires. *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (stating that an ultra vires claim is "purely one of statutory construction*")*; *Yang v. INS*, 79 F.3d 932, 934 (9th Cir. 1996) (holding that a question of whether a regulation was ultra vires was a "purely legal question"); *Wind River Mining v. United States*, 946 F.2d 710, 717 (9th Cir. 1991) (holding that "the definition of an ultra vires act" is a "question of law"). Therefore, we review the merits of Jean's ultra vires claim.

## C.  Merits of Jean's Ultra Vires Claim

Jean claims that the Attorney General's decision not to waive her removal was ultra vires. Under 8 U.S.C. § 1159(c), the Attorney General may adjust the status of a refugee by waiving the criminal grounds of inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." Jean argues that the Attorney General's decision in her case is inconsistent with the statutory scheme and therefore was ultra vires. Specifically, she contends that the Attorney General utilized a heightened standard, one not articulated by the statutory provision, in analyzing her application for waiver.

The Attorney General did create and impose a heightened standard in Jean's case by adding a factor to be considered. For a section 1159(c) waiver determination, he directed administrative judges (like an IJ or BIA panel) to consider the "nature of the

7

criminal offense that rendered an alien inadmissible in the first place" and balance the "claims of hardship to the . . . family against the gravity of [the] criminal offense." *Jean*, 23 I. & N. Dec. at 383. He articulated the test as follows:

> It would not be a prudent exercise of the discretion afforded to me by this provision [§ 1159(c)] to grant favorable adjustments of status to violent or dangerous individuals except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, such a showing might still be insufficient. . . . For those aliens . . . who engage in violent criminal acts during their stay here, this country will not offer its embrace.

*Id*. at 383–84.

In adjusting the factors to be considered under section 1159(c), the Attorney General acted lawfully. First, he did not impose the heightened "extreme hardship" standard on all aliens with aggravated felony convictions but "only on those who 'engage in violent criminal acts.'" *Rivas-Gomez v. Gonzales*, 441 F.3d 1072, 1079 (9th Cir. 2006) (quoting *Jean*, 23 I. & N. Dec. at 384). As the Ninth Circuit noted, the Attorney General's determination in *Jean* was "fact-based, not categorical." *Rivas-Gomez*, 441 F.3d at 1079. Indeed, the BIA has limited *Jean*'s heightened waiver requirement to "dangerous or violent crimes" in a subsequent decision. *See In re K–A–*, 23 I. & N. Dec. 661, 666 (BIA 2004).

8

Second, the Attorney General did not add a class of aliens to those who are statutorily ineligible for waiver, nor did he instruct the BIA to ignore statutory considerations of family unity, humanitarian concerns, and public interest. *See Togbah v. Ashcroft*, 104 Fed. Appx. 788, 794 (3d Cir. July 8, 2004) (unpublished). He left open the possibility that even the most violent and dangerous immigrants could be granted relief in an appropriate case. Moreover, the Attorney General acted within his broad discretion.

The Attorney General has broad discretionary authority to grant or deny a waiver. *See, e.g., Jay v. Boyd*, 351 U.S. 345, 353–54 (1956) (interpreting the then-current statute allowing suspension of deportation as giving the Attorney General "unfettered discretion"); *see also Rivas-Gomez*, 441 F.3d at 1078 ("[T]he Attorney General has broad discretion to grant or deny waivers and may establish general standards governing the exercise of such discretion . . . ."). The Ninth Circuit has held that the Attorney General's articulated standards must be rationally related to the statutory scheme. *Rivas-Gomez*, 441 F.3d at 1078. Using that test, the *Rivas-Gomez* Court decided that the *Jean* heightened waiver standard is "rationally related to the national immigration policy of not admitting aliens who would be a danger to society." *Id.* Likewise, the Third Circuit found the *Jean* decision to be within the Attorney General's "permissible exercise of his

statutory discretion." *Togbah*, 104 Fed. Appx. at 794. It implied that such a decision should be reviewed for arbitrariness and capriciousness. *Id.* We read both the Ninth and Third Circuit decisions as essentially holding that general standards articulated by the Attorney General for the exercise of discretion should be rational and connected to the statutory scheme. We agree that this is the appropriate inquiry. We also agree that the standards utilized in this case meet that inquiry. In sum, the Attorney General acted in his broad, discretionary authority when he denied Jean's waiver application.

We have held that, once it is determined that an act "did not exceed the authority given to it by Congress," the action is not ultra vires. *United States v. Underwood*, 61 F.3d 306, 311 (5th Cir. 1995) (examining whether a Sentencing Commission action was ultra vires). Applying *Underwood*'s logic, the Attorney General did not exceed the discretionary authority afforded to him by Congress. Therefore, the Attorney General's decision was not ultra vires.

## III. CONCLUSION

Pursuant to the REAL ID Act, we have jurisdiction to consider the challenge raised in what now has been converted into a petition for review because it contains a question of law. However, Jean's argument that the Attorney General acted outside his statutorily-granted authority fails. The Attorney General's decision,

10

therefore, was not ultra vires.  Accordingly, we DENY the petition for review.