# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-60039

---

JOSE RAFAEL PEREZ PIMENTEL

Petitioner

v.

MICHAEL B. MUKASEY, U S ATTORNEY GENERAL

Respondent

---

Petition for Review from an Order of
the Board of Immigration Appeals

---

Before REAVLEY, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:

Jose Rafael Perez Pimentel petitions this Court for review from an order of the Board of Immigration Appeals denying waiver of inadmissibility and application for adjustment of status. We conclude that the Attorney General's regulation was not an ultra vires act and was not impermissibly retroactively applied. Thus, we DENY the petition.

## I.    BACKGROUND

Petitioner Pimentel is a native and citizen of Mexico. He entered the United States without inspection in 1978. He was convicted of burglary in 1983 and possession of marijuana in 1990. In 2004, Pimentel was served with a Notice to Appear ("NTA") that alleged he was removable as an alien present

without admission or parole, as an alien convicted of a crime involving moral turpitude, and as an alien convicted of a controlled substance offense.

Pimentel appeared before an immigration judge (IJ), admitted the allegations in the NTA, and conceded his removability. He sought adjustment of status through an employment-based visa petition and a waiver of inadmissibility.

Pimentel testified that he is married with three children, including two children who are U.S. citizens; however, his wife and his other child have no legal immigration status. He testified that he was employed, and his employer had petitioned for an employment visa.

Pimentel testified that he had been arrested for burglary in 1983. He said he had agreed to help a man who claimed he was removing items from his own home. Pimentel said he was sentenced to two years of imprisonment and served only nine months. He also testified that he was arrested in 1990 for marijuana possession after police found him in possession of the remains of marijuana cigarettes.

If he were deported, Pimentel first stated his children would accompany him; later, he said he would leave his children in the U.S. because he would not be able to provide for their education and other needs in Mexico. Pimentel testified that his older son previously had surgery on his back, and he required a doctor's visit for pain medication every two to three months. Pimentel said only his oldest child had been to Mexico. He said his children spoke only a "little bit" of Spanish. He said he has no family in Mexico, but his wife does have family there. Pimentel also testified that he has numerous other family members living in the United States.

Pimentel's wife stated that she and the children would return to Mexico if he was deported. She said the family was entirely dependant on Pimentel's income. She also testified that the family would suffer if they went to Mexico

because the children "don't know what Mexico is about and they're not going to be able to become what they want to become." She also stated the family would be unable to live with other family in Mexico due to space limitations.

The IJ first found that Pimentel's conviction for possession of a personal use amount of marijuana did not require a waiver of inadmissibility. However, the IJ found that his burglary conviction would require a "Section 212(h)" waiver of inadmissibility. The IJ found that 8 C.F.R. § 212.7(d) applied because the burglary conviction constituted a violent crime. Pursuant to § 212.7(d), the IJ found that Pimentel must establish that the denial of a visa "would result in exceptional and extremely unusual hardship." The IJ concluded that, although Pimentel's U.S. citizen children would suffer "extreme hardship" if they moved to Mexico with Pimentel, he had not shown the required "exceptional and extremely unusual hardship." The IJ denied Pimentel's application for a waiver of inadmissibility; because he was inadmissible, the IJ also denied his application for adjustment of status.

Pimentel appealed to the BIA. The BIA affirmed the IJ's finding that Pimentel's prior burglary conviction was a "violent or dangerous crime." The BIA also affirmed the finding that Pimentel had not shown that his two U.S. citizen children would suffer "exceptional and extremely unusual hardship." The BIA affirmed the denial of a waiver of inadmissibility and the denial of an adjustment of status.

Pimentel filed a petition for review in this Court. He then moved the BIA to reconsider its decision, or in the alternative to reopen and remand. Pimentel also filed a motion in this Court to hold his petition in abeyance, which was granted. The BIA denied Pimentel's motion; however, he did not file a timely petition for review of the denial of his motion for reconsideration. Thus, we do not review the BIA's denial of reconsideration.

II.    ANALYSIS

## A. ULTRA VIRES

Pimentel contends that the Attorney General's promulgation of 8 C.F.R. § 212.7(d) was an ultra vires amendment of 8 U.S.C. 1182(h). This Court gives deference to the BIA's interpretation of the Immigration and Nationality Act (INA) under the principles of Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). Chevron provides for a two-step inquiry. "We first ask whether Congress has spoken directly to the precise question at issue." Heaven v. Gonzalez, 473 F.3d 167, 174-75 (5th Cir. 2006) (citing Chevron, 467 U.S. at 842; Malagon de Fuentes v. Gonzales, 462 F.3d 498, 502 (5th Cir. 2006)). "If Congress's intent is clear, the BIA and this court must give effect to that intent." Id. at 175 (citing Chevron, 467 U.S. at 842-43; Malagon, 462 F.3d at 502). However, if "the statute is silent or ambiguous with respect to the specific issue, we ask only whether 'the agency's answer is based on a permissible construction of the statute.'" Id. (quoting Chevron, 467 U.S. at 843; Malagon, 462 F.3d at 502).

The statute in question provides that the Attorney General may waive inadmissibility "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States . . . if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen." 8 U.S.C. § 1182(h)(1)(B). The regulation provides that the Attorney General generally "will not favorably exercise discretion . . . with respect to immigrant aliens who are inadmissible . . . in cases involving violent or dangerous crimes, except in extraordinary circumstances, such as those . . . cases in which an alien clearly demonstrates that the denial of [relief] would result in exceptional and extremely unusual hardship." 8 C.F.R. § 212.7(d).

Pimentel asserts that heightening the requirement from "extreme hardship" to "exceptional and extremely unusual hardship" with respect to a

waiver of inadmissibility for violent crimes constituted an ultra vires act. As indicated above, our first inquiry under Chevron is whether Congress has spoken directly with respect to the precise question. Pimentel argues that Congress has clearly specified that the proper standard is "extreme hardship." However, Pimentel fails to address the entirety of the statute. In § 1182(h)(1)(B), Congress did specify that the Attorney General "may, in his discretion" waive inadmissibility if the alien can show "extreme hardship" to a qualifying relative. Additionally, in § 1182(h)(2), Congress specified that the "Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe," must consent to the alien's application for the underlying relief sought. By its own terms, the regulation at § 212.7(d) is directed at § 1182(h)(2), rather than § 1182(h)(1)(B). See § 212.7(d) (stating that "[t]he Attorney General, in general, will not favorably exercise discretion under section 212(h)(2) of the Act (8 U.S.C. 1182(h)(2))"). Thus, Congress has not spoken to the standards the Attorney General may employ under § 1182(h)(2), and the regulation is directed only to the Attorney General's discretion under that subsection. The Ninth Circuit agrees. In Mejia v. Gonzales, the court opined that the failure of Congress to provide any standard for the Attorney General's exercise of discretion under § 1182(h)(2) meant that Congress has not "directly spoken to the precise question at issue." 499 F.3d 991, 996 (9th Cir. 2007).

The second step of the Chevron analysis is to examine whether the regulation is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Pimentel argues that the regulation is not a permissible construction of the statute because it is vague, arbitrary, and capricious.

In Mejia, the Ninth Circuit held that the instant regulation was based on a permissible interpretation of the statute, explaining that the "heightened standard is rationally related to the national immigration policy of not admitting

aliens who could be a danger to society." 499 F.3d at 996 (citing Jean v. Gonzales, 452 F.3d 392, 396-98 (5th Cir. 2006) (other citations omitted). The Ninth Circuit relied on this Court's decision in Jean because Jean involved language nearly identical to that later codified at § 212.7(d). Id. (citing Jean,452 F.3d at 396-98). In Jean, after directing that the case be referred to his office, the Attorney General reversed the BIA and concluded that he generally would decline to exercise his discretion to grant an adjustment of status to "violent or dangerous individuals except in extraordinary circumstances, such as . . . cases in which an alien clearly demonstrates that the denial . . . would result in exceptional and extremely unusual hardship." 452 F.3d at 397 (quoting In re Jean, 23 I. & N. Dec. 373, 383 (BIA 2002)). Following the Attorney General's decision, Jean filed a habeas petition, arguing in relevant part that the Attorney General's decision was ultra vires. Jean, 452 F.3d at 395. After this Court converted Jean's habeas petition to a petition for review, it concluded that the Attorney General had acted lawfully. Id. at 397-98. We noted that the "heightened 'extreme hardship'" standard was imposed only on a limited class, i.e., aliens who engaged in violent criminal acts. Id. at 397. We further noted that the Attorney General "did not add a class of aliens to those who are statutorily ineligible for waiver, nor did he instruct the BIA to ignore the statutory considerations." Id. This Court concluded that the Attorney General had "acted within his broad discretion" and that the standard articulated was "rational and connected to the statutory scheme." Id. Because the Attorney General "did not exceed the discretionary authority afforded to him by Congress," this Court concluded that the Attorney General's decision was not ultra vires. Id. at 397-98; accord Ali v. Achim, 468 F.3d 462, 466-67 (7th Cir. 2006) (explaining that it "agree[d] with our sister circuits that the Attorney General did not exceed his statutory authority when he articulated the heightened waiver standard in Matter of Jean").

Although Jean did not involve the instant regulation, like the Ninth Circuit in Mejia, 499 F.3d at 996-97, we perceive no principled distinction and therefore must conclude that the promulgation of 8 C.F.R. § 212.7(d) was a permissible construction of the statute and not ultra vires.

## B.     RETROACTIVE APPLICATION

Pimentel also suggests that the regulation is impermissibly retroactive. To determine whether a regulation may be applied retroactively, a reviewing court first examines whether the regulation clearly expresses whether it is to be applied retroactively.   Landgraf v. U.S.I. Film Products, 511 U.S. 244, 280 (1994).   If there is no clear expression as to retroactivity, the court then considers whether the regulation would have a retroactive effect.  Id.; I.N.S. v. St. Cyr, 533 U.S. 289, 321 (2001).  There is a retroactive effect when the new regulation "takes away or impairs vested rights . . . creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." St. Cyr, 533 U.S. at 321 (internal quotation marks footnote and citations omitted).

In the instant case, the regulation does not discuss retroactivity.  See § 212.7(d).  However, the regulation is not impermissibly retroactive because it does not completely foreclose relief.  Both prior and subsequent to promulgation of the regulation, Pimentel could seek a waiver of inadmissibility under § 1182(h) and he would be subject to the Attorney General's discretion regarding whether to grant relief.  Therefore, the new regulation "neither attaches a new disability to past conduct nor upsets settled expectations."  Mejia, 499 F.3d at 998 (rejecting retroactivity challenge to § 212.7(d)).


## III.   CONCLUSION

For the above reasons, we DENY the petition for review.