# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORGE MEJIA,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General,

Respondent.

No. 04-74001

Agency No.
A76-613-262

JORGE MEJIA,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General,

Respondent.

No. 04-76214

Agency No.
A76-613-262

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 10, 2007—Pasadena, California

Filed August 24, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge McKeown

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

10491

## COUNSEL

Raul E. Godinez, Law Office of Raul E. Godinez, Los Angeles, California, for the petitioner.

Peter Keisler, Assistant Attorney General, Department of Justice, Washington, DC; and Francesco Isgro and Papu Sandu, Office of Immigration Litigation, Department of Justice, Washington, DC, for the respondent.

## OPINION

McKEOWN, Circuit Judge:

In late 2002, the Attorney General promulgated a rule designed to guide Immigration Judges ("IJs") in deciding whether to grant waivers of inadmissibility to the United States based on certain criminal grounds. The regulation provides that in cases where individuals have committed "violent or dangerous crimes," the Attorney General will not exercise his discretion to grant waivers under 8 U.S.C. § 1182(h) (known as § 212(h) relief) unless the individual can show "exceptional and extremely unusual hardship." 8 C.F.R. § 212.7(d).

In this appeal we consider, among other issues, Jorge Humberto Mejia's ("Mejia") challenge to the application of this regulation to his removal proceedings. We hold that adoption of 8 C.F.R. § 212.7(d) is a permissible exercise of the Attorney General's authority and the regulation may be applied to convictions that became final before the effective date of the regulation.

## BACKGROUND

Mejia, a native and citizen of El Salvador, entered the United States without inspection in the early 1980s. In 1988, he married Angela Mejia, a United States citizen, and together they have three daughters, two of whom are U.S. citizens. Angela Mejia also has a daughter from a previous relationship, Gloria.

In 1989, Mejia was convicted of violating provisions of the California Penal Code that prohibit child molestation and commission of lewd and lascivious acts upon a child. *See* Cal. Penal Code § 288(a), (c). These convictions were based on Mejia's repeated molestation of his step-daughter, Gloria, beginning when Gloria was twelve years old and continuing for approximately three and a half years. This conduct included slapping her, massaging her breasts, and fondling her genitals. Mejia pleaded guilty and served seven months in jail.

In August 2000, the Immigration and Naturalization Service ("INS") served Mejia with a Notice to Appear, charging him as removable in violation of 8 U.S.C. § 1182(a)(2)(A)(i)(I)[1] and 8 U.S.C. § 1182(a)(6)(A)(i).[2] At his initial hearing, before the IJ, Mejia conceded removability and asked for time to apply for an adjustment of status and a waiver of inadmissibility under Immigration and Nationality Act ("INA") § 212(h), 8 U.S.C. § 1182(h).[3]

---

[1]8 U.S.C. § 1182(a)(2)(A)(i) states that "[e]xcept as provided in clause (ii), any alien convicted of, or who admits having committed acts which constitute the essential elements of — (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible."

[2]8 U.S.C. § 1182(a)(6)(A)(i) states that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[3]8 U.S.C. § 1182(h) states in part that "[t]he Attorney General may, in his discretion, waive the application of subparagraph[ ](A)(i)(I) . . . of sub-

In April 2003, the IJ conducted a hearing on Mejia's § 212(h) application. The IJ heard testimony from Mejia, his brother, his wife, and two of his daughters, but not from his stepdaughter Gloria, who declined to appear. The IJ denied Mejia's petition for a § 212(h) waiver on the merits. In denying relief, the IJ held that the standard set forth in *Matter of Jean*, 23 I. & N. Dec. 373 (BIA 2002), and later codified at 8 C.F.R. § 212.7(d), governed Mejia's application.[4] Section 212.7(d) states that, in general, the Attorney General will not exercise his discretion to grant a § 212(h) waiver in a case involving a "violent or dangerous crime[ ]" unless the applicant shows "exceptional and extremely unusual hardship." 8 C.F.R. § 212.7(d). Applying this standard, the IJ held that Mejia failed to meet the high burden of exceptional and extremely unusual hardship. The IJ acknowledged that this was a "very difficult" case but concluded that denial was appropriate because "the seriousness of the crime, even though he has demonstrated rehabilitation, is just virtually inexcusable." The IJ also noted other factors that weighed against waiver, including the circumstances of the crime, Mejia's denial of the events when confronted, and the fact that Gloria did not testify on his behalf.

The BIA adopted and affirmed the IJ's decision, citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994). The BIA also observed that all of Mejia's convictions "constitute[d] crimes of violence," and held that Mejia failed to show exceptional or extremely unusual hardship.

---

section (a)(2) of this section . . . if . . . in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence . . . it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . . ."

[4]The regulation also appears at 8 C.F.R. § 1212.7(d). Because the Federal Register refers to § 212.7(d), we use that reference throughout. *See* Waiver of Criminal Grounds of Inadmissibility for Immigrants, 67 Fed. Reg. 78,675-01 (Dec. 26, 2002).

Mejia filed a timely motion to reopen with the BIA, which was denied. Mejia petitions for review of both the denial of § 212(h) relief and his motion to reopen.[5]

## ANALYSIS

### I. ATTORNEY GENERAL'S AUTHORITY TO PROMULGATE 8 C.F.R. § 212.7(d)

[1] The first question we consider is whether the Attorney General exceeded his statutory authority in adopting 8 C.F.R. § 212.7(d), the regulation that establishes a heightened burden under § 212(h) for individuals who have committed violent or dangerous crimes. Section 212(h)(1) states that the Attorney General may, "in his discretion" waive the inadmissibility of certain criminal aliens if "it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). This waiver may be granted if "the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status." *Id.* § 1182(h)(2).

[2] In 2003, the Attorney General adopted 8 C.F.R. § 212.7(d), which states:

> The Attorney General, in general, will not favorably exercise discretion under section 212(h)(2) of the

---

[5]In his brief on appeal, Mejia does not discuss the arguments in his appeal to the BIA as distinct from those in his motion to reopen. To the extent that those issues overlap, we discuss them below. To the extent that the motion to reopen discusses separate issues, any challenge to those issues is waived. *See Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001).

> [Immigration and Nationality] Act (8 U.S.C. § 1182(h)(2)) to consent to an application or reapplication for a visa, or admission to the United States, or adjustment of status, with respect to immigrant aliens who are inadmissible under section 212(a)(2) of the [Immigration and Nationality] Act in cases involving violent or dangerous crimes, except in extraordinary circumstances, such as . . . cases in which an alien clearly demonstrates that the denial of [relief] would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act.

In issuing the regulation, the Attorney General emphasized that "8 C.F.R. § 212.7(d) governs only the exercise of discretion under section 212(h)(2) of the Act, after the alien has met the threshold requirement of section 212(h)(1) of the Act." 67 Fed. Reg. at 78,677.

Mejia argues that there is a disconnect between the language of the statute—"extreme hardship"—and the burden imposed by the regulation—an "exceptional and extremely unusual" hardship. His suggestion that the regulation exceeds the bounds of the Attorney General's authority misconceives the statute as a whole and the discretion Congress has entrusted to the Attorney General in this arena.

We apply the "familiar *Chevron* two-step approach" to determine whether 8 C.F.R. § 212.7(d) is valid. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007) (en banc) (applying *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984), to determine whether an immigration regulation was ultra vires). In the first step of the *Chevron* inquiry, we ask "whether Congress has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842—here,

whether Congress has established the standard that the Attorney General may use in exercising his discretion to grant § 212(h) relief. In fact, Congress has not spoken on this issue as the statute does not address any standard for exercise of his discretion under § 212(h)(2).

Therefore, we assess "whether the agency's [regulation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see also Morales-Izquierdo*, 486 F.3d at 492. "[T]he agency construction [need not be] the only one it permissibly could have adopted . . . , or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11.

The regulation speaks only to the exercise of discretion under § 212(h)(2), not to the threshold determination of eligibility under § 212(h)(1). The Attorney General has not changed or altered the statutory "extreme hardship" standard. Instead, he has promulgated a regulation to guide IJs in the way they exercise their relatively unfettered grant of discretion after the statutory requirements are met. *Cf.* 8 U.S.C. § 1252(a)(2)(B)(i) (insulating from judicial review discretionary determinations under 8 U.S.C. § 1182(h)).

**[3]** The regulation does not alter or supercede the "extreme hardship" standard. Rather, the regulation supplements and gives definition to the standard to be applied in the cases of individuals who have committed violent or dangerous crimes. The Attorney General, in the exercise of his discretion, suggests that the equities disfavor, although do not preclude, relief in this circumstance. Given Congress's broad grant of discretion, this approach is not inconsistent with the statute or the Attorney General's authority.

As we noted in *Ayala-Chavez v. INS*, "[C]ourts have always interpreted broadly the discretionary authority of the Attorney General to grant or deny waiver of deportation. . . . Inherent in this discretion is the authority of the Attorney

General and his subordinates to establish general standards that govern the exercise of such discretion, as long as these standards are rationally related to the statutory scheme." 944 F.2d 638, 641 (9th Cir. 1991). In that case, we held that where Congress had not specified any standards with respect to the discretionary determination of eligibility for relief under former INA § 212(c), the Attorney General did not exceed his statutory authority by requiring a showing of "outstanding equities" from those individuals who had been convicted of serious drug offenses. *See id.*

**[4]** The heightened standard is rationally related to the national immigration policy of not admitting aliens who could be a danger to society. Our sister circuits are in accord. *See Ali v. Achim*, 468 F.3d 462, 466-67 (7th Cir. 2006) (affirming the BIA's use of the §212.7(d) standard before it was formally codified); *Jean v. Gonzales*, 452 F.3d 392, 396-98 (5th Cir. 2006) (same); *compare Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005) (holding, under a different section of the INA, that categorically eliminating a certain type of relief exceeds the Attorney General's discretion). The regulation, which neither precludes relief for the class of aliens who commit violent crimes nor instructs the IJ to ignore the statutory considerations, is within the Attorney General's authority.

## II.   RETROACTIVE APPLICATION OF 8 C.F.R. § 212.7(d)

Mejia, whose convictions were entered long before the regulation was enacted, next contends that the BIA violated constitutional prohibitions on retroactivity by applying 8 C.F.R. § 212.7(d) to him. As a preliminary matter, we reject the government's claim that Mejia waived this argument by failing to exhaust his administrative remedies. Although ordinarily we do not hear an argument raised for the first time in a petition for review, we excuse the lack of exhaustion where a petitioner raises a challenge to the constitutionality of the statutes and regulations the BIA administers. *See Padilla-Padilla v. Gonzales*, 463 F.3d 972, 976-77 (9th Cir. 2006); *see also*

*Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) (applying this principle to a retroactivity challenge).

**[5]** Turning to the merits, we hold that § 212.7(d) may be applied retroactively. Determining whether a regulation or statute may be applied retroactively requires a two-step analysis under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). First, we determine whether the statute or regulation clearly expresses that the law is to be applied retroactively, *id.* at 280, which is not the case here. The regulation makes no mention of the timing of the convictions it affects. *See* 8 C.F.R. § 212.7(d).

**[6]** In the absence of clear direction, we must consider whether application of the regulation would have a retroactive effect. *Landgraf*, 511 U.S. at 280. "The inquiry into whether a statute [or regulation] operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotations omitted). A regulation has retroactive effect "when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *See id.* (internal quotations omitted). A judgment bearing on retroactivity should be guided by "fair notice, reasonable reliance, and settled expectations." *Id.* (internal quotations omitted).

Relying principally on *St. Cyr*, Mejia argues that the regulation "attaches a new disability, in respect to transactions or considerations already past." *See id.* (internal quotations omitted). *St. Cyr* addressed an individual's continuing eligibility for relief under former INA § 212(c). The Supreme Court held that the INS could not retroactively apply the repeal of § 212(c) to individuals whose plea-based convictions were entered before Congress enacted the Illegal Immigration

Reform and Immigrant Responsibility Act ("IIRIRA"). *Id.* at 321. The Court reasoned that

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past. . . . There can be little doubt that, as a general matter, alien defendants . . . are acutely aware of the immigration consequences of their convictions. . . . Given the frequency with which § 212(c) relief was granted in the years leading up to [the Anti-Terrorism and Effective Death Penalty Act] and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

*Id.* at 321-23 (internal quotations and citations omitted).

**[7]** Mejia argues that like St. Cyr, he pleaded guilty to his offenses with the expectation that the standard for § 212(h) relief would be "extreme hardship," rather than "exceptional and extremely unusual hardship." He analogizes to St. Cyr's expectation that § 212(c) relief would be available. The question, then, is whether the Attorney General's articulation of an enhanced standard "attaches a new disability" to Mejia's conviction. *See id.* at 321.

**[8]** Although Mejia's argument has some analytical appeal, his situation differs from St. Cyr's in one significant way: In *St. Cyr*, the repeal of the statute deprived would-be immigrants from seeking *any* relief under the statute. *Id.* Here, the challenged regulation does not completely foreclose the possibility of relief as did the repeal of § 212(c) in *St. Cyr*. Both before and after the adoption of § 212.7(d), Mejia had the ability to seek relief under INA § 212(h). Before and after the

regulation took effect, Mejia would have been subject to the Attorney General's discretion, provided that he met the threshold statutory requirements at INA § 212(h)(1). And, both before and after the regulation took effect, we may presume Mejia knew that the IJ would weigh the equities of his case and make a decision. As the Supreme Court observed in *St. Cyr*, "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *Id.* at 325. Both before and after the adoption of the regulation, Mejia faced only possible deportation.

**[9]** Nor could Mejia reasonably rely on the "extreme hardship" standard applying to the discretionary (rather than statutory eligibility) aspect of the Attorney General's analysis because Congress never suggested that the "extreme hardship" standard applied to the Attorney General's exercise of discretion. Applying the regulatory "exceptional and extremely unusual" standard to Mejia does not have an impermissibly retroactive effect because it neither attaches a new disability to past conduct nor upsets settled expectations.

## III.   MEJIA'S REMAINING CLAIMS

We briefly address Mejia's remaining claims. Mejia first contends that the BIA erred in using the term "crimes of violence" rather than the statutory standard "violent and dangerous" crime, and that, in any event, he did not commit a crime of violence. The government responds that we lack jurisdiction over this challenge. We disagree with both parties' arguments.

Looking first at the government's argument, the jurisdictional statute cited by the government, 8 U.S.C. § 1252(a)(2)(B)(i), is just a starting point for our jurisdictional analysis. That statute provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section 1182(h) . . . ." 8 U.S.C. § 1252(a)(2)(B)(i).

Despite the categorical language of § 1252(a)(2)(B)(i), a separate subsection, § 1252(a)(2)(D), provides that "[n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D).

The government argues that § 1252(a)(2)(B)(i)'s prohibition on judicial review extends to the determination that Mejia's crimes are violent or dangerous, but this contention misconceives Mejia's claim. Mejia contends specifically that the BIA and the IJ used an erroneous legal standard in their analysis. This is a legal question over which we retain jurisdiction. 8 U.S.C. § 1252(a)(2)(D).

**[10]** Turning to Mejia's underlying claim, we hold that it lacks merit—the BIA specifically found that "the respondent's crimes are both violent and dangerous." The BIA's passing references to "crimes of violence" are not inconsistent with the statutory standard. To the extent Mejia also argues that his convictions under California Penal Code § 288(a) are not crimes of violence, that argument is foreclosed by Ninth Circuit precedent. *See United States v. Teeples*, 432 F.3d 1110, 1111 (9th Cir. 2006) (holding that a violation of § 288(a) is a crime of violence under United States Sentencing Guidelines § 4B1.1(a)); *United States v. Medina-Maella*, 351 F.3d 944, 946-47 (9th Cir. 2003) (holding that a violation of § 288(a) is a crime of violence under United States Sentencing Guidelines § 2L1.2(b)(1)).

We do not have jurisdiction to review the last two issues raised by Mejia. Mejia argues that if the BIA had considered *Matter of Jean*, 23 I. & N. Dec. 373, it would have concluded that his case was not factually similar enough to that case to warrant denial of relief. Lastly, Mejia challenges the BIA's failure to consider his extensive rehabilitation when it denied

his § 212(h) application. As noted, § 1252(a)(2)(B)(i) precludes us from reviewing the BIA's decision under § 212(h), unless the petition raises a cognizable legal or constitutional question concerning that determination. *See Fernandez v. Gonzales*, 439 F.3d 592, 596 (9th Cir. 2006). Both of these claims fall well within the BIA's discretionary authority and are not subject to our review. *See* 8 U.S.C. § 1252(a)(2)(B)(i).

**PETITIONS DENIED.**