05-2646-ag
Samuels v. Chertoff

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT vbn

—————————

August Term, 2008

(Argued: September 4, 2008                    Decided: December19, 2008)

Docket No. 05-2646-ag

—————————

MICHAEL ALEXANDER SAMUELS, also known as Michael Bryan,

Petitioner,

-v-

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JULIE L. MYERS, Assistant Secretary, United States Immigration and Customs Enforcement; CHRISTOPHER SHANAHAN, New York City Field Director, United States Immigration and Customs Enforcement; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,[*]

Respondents.

—————————

Before: POOLER, SACK, and KATZMANN,

Circuit Judges.

—————————

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Chertoff, Assistant Secretary Myers, and Director Shanahan are substituted for their predecessors in office, who were, respectively, Thomas Ridge, Michael J. Garcia, and Edward J. McElroy.

Petitioner seeks review of an order of the Board of Immigration Appeals ("BIA") ordering his deportation after denying his application for relief pursuant to Immigration and Nationality Act § 212(h), 8 U.S.C. § 1182(h). We reject Samuels's claims that (1) 8 C.F.R. § 1212.7(d) is inconsistent with Section 212(h), (2) the promulgation of Section 1212.7(d) was arbitrary and capricious, and (3) application of the regulation to his case was impermissibly retroactive. However, because it is not clear that the BIA correctly applied Section 1212.7(d) to Samuels's application, we grant review, vacate and remand.

Petition for review GRANTED.

———————

MATTHEW L. GUADAGNO, Bretz & Coven, LLP, New York, NY (Jules E. Coven and Kerry W. Bretz, on the brief) for Petitioner.

NATASHA OELTJEN, Assistant United States Attorney for the Southern District of New York, New York, NY (Michael J. Garcia, United States Attorney, and Neil M. Corwin, Assistant United States Attorney, on the brief) for Respondents.

———————

POOLER, Circuit Judge:

Michael Alexander Samuels petitions for review of an order of the Board of Immigration Appeals ("BIA" or "Board") that affirmed an order of Immigration Judge ("IJ") Alan Page finding Samuels deportable and denying his application for relief pursuant to Immigration and Nationality Act § 212(h), 8 U.S.C. § 1182 (h). While Samuels conceded deportability, he applied for adjustment of status based on the citizenship of his wife, a form of relief that his commission of attempted robbery barred. Thus, Samuels applied for a Section 212(h) waiver of this bar, which is available in the Attorney General's discretion if the alien's deportation would result in "extreme hardship" to a citizen of the United States or legal permanent resident who is the alien's spouse, parent, or child.

At the time Samuels was convicted, the Attorney General had not issued a regulation to

2

govern his discretion under Section 212(h). However, during the pendency of Samuels's deportation proceedings, the Attorney General, after notice and comment proceedings, promulgated a regulation codified at 8 C.F.R. § 1212.7(d). That regulation provides that the Attorney General will ordinarily not exercise discretion favorably where the alien has committed a violent or dangerous crime but allows for exceptions "in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of the application for adjustment of status . . . would result in exceptional and extremely unusual hardship." Samuels contends that the regulation goes beyond the Attorney General's statutory authority, is arbitrary and capricious because the Attorney General deviated from prior precedent without a reasoned explanation, and is impermissibly retroactive as applied to him. He also argues that the BIA too narrowly interpreted its own regulation when it denied him relief.

## BACKGROUND

On July 31, 1992, Samuels, a native and citizen of Jamaica, entered the United States illegally with a passport and non-immigrant visa issued under the false name, "Michael Bryan." Once here, Samuels moved in with his long-term partner, Mauverine Bryan ("Mauverine"), who is also the mother of Samuels's twenty-two-year-old son, Jumaine, and seven-year-old daughter, Brianna. Mauverine has been a citizen of the United States since May 1, 1996, and before then was a lawful permanent resident ("LPR"). Mauverine sponsored Jumaine for LPR status, and he arrived in the United States in November 1996.

On January 13, 1995, Samuels pleaded guilty to attempted robbery in the first degree under Sections 110 and 160.15(2) of the New York Penal Law. He was sentenced to an

3

indeterminate term of one-and-a-half to four-and-a-half years of imprisonment. On March 10, 1995, the former Immigration and Naturalization Service served an order on Samuels requiring him to show cause why he should not be deported as a non-immigrant who had remained in the United States longer than permitted. Six months later, Samuels married Mauverine.

At a July 1996 hearing before Immigration Judge ("IJ") Alan Page, Samuels conceded that he was deportable but indicated that he intended to apply for adjustment of status pursuant to 8 U.S.C. § 1255 based on his wife's citizenship and for a Section 212(h) waiver of the bar to adjustment of status created by his conviction.

On March 28, 1997, the INS added a new charge of deportability based on Samuels's admission under a false name. IJ Page sustained this charge and advised Samuels that he would require a Section 212(i) waiver of the fraud charge in order to pursue his adjustment of status application. IJ Page granted Samuels both waivers in a September 25, 1997, decision. He found that "[Samuels's] emotional and financial support is essential to his wife's and his son's well-being, and that [Samuels's] deportation and the resulting separation from his immediate family would result in extreme hardship particularly to [his] wife as well as to his son." The IJ also found that the positive factors affecting the discretionary decision of whether to grant the waivers outweighed the negative factors.

The BIA reversed in a February 4, 2000, decision. Although the Board applied the same test as the IJ—extreme hardship—in determining whether Samuels was eligible for consideration for a waiver, it found that Samuels had not demonstrated extreme hardship. The BIA also found that Samuels did not merit a favorable exercise of discretion because his criminal and immigration history manifested "a pattern of unlawful behavior" that was not outweighed by

favorable equities.

In May 2000, Samuels moved to reopen the BIA's decision. In support of his application, he submitted a letter from a family therapist, Dr. Bonnie Weil, who had seen the Samuels family twice in March 2000. Weil stated that Jumaine was experiencing severe separation anxiety and that both Jumaine and Mauverine would suffer extreme hardship if Samuels were deported. The Board granted reopening and remanded to the IJ after finding that (1) the letter constituted new evidence that could not have been offered previously and (2) Jumaine's psychological problems were likely the result of the Board's reversal of the IJ's grant of discretionary relief.

Samuels and Mauverine testified at a hearing on remand on March 11, 2002. After hearing Samuels's and Mauverine's testimony, IJ Page adjourned for the submission of certain records. At the next appearance on January 12, 2003, the government informed the IJ that the Attorney General had recently adopted a new regulation, effective January 27, 2003, to govern Section 212(h) waivers. In pertinent part, this regulation, now 8 C.F.R. § 1212.7(d), provides:

> The Attorney General, in general, will not favorably exercise discretion under section 212(h)(2) of the Act (8 U.S.C. 1182(h)(2)) to consent to an application . . . for . . . adjustment of status, with respect to immigrant aliens who are inadmissible under section 212(a)(2) of the Act in cases involving violent or dangerous crimes, except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of the application for adjustment of status . . . would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act.

The IJ offered the parties an opportunity to brief the applicability of the new regulation. In response, Samuels argued that in departing from the statutory standard of "extreme hardship,"

the Attorney General had gone outside his statutory authority. In addition, Samuels contended that the new rule could not be applied retroactively to his conviction.

In his April 1, 2003, decision, IJ Page denied Samuels a Section 212(h) waiver and therefore pretermitted his application for adjustment of status. Although the IJ found that Samuels had demonstrated that his wife and children would experience extreme hardship if he were deported, the IJ also found that the equities did not weigh in Samuels's favor, making the grant of a waiver inappropriate. Because of the result he reached on the discretionary factors, the IJ found it unnecessary to determine whether Section 1212.7(d) applied retroactively.

On appeal to the Board, Samuels argued that the IJ's discretionary decision was clearly erroneous. The government also appealed, arguing that the IJ's "extreme hardship" finding was erroneous. However, the government did not ask the BIA to apply the new regulation.

The BIA upheld the IJ's finding of extreme hardship but held that Section 1212.7(d) applied to govern the exercise of discretion that occurs after "extreme hardship" is found. After considering the arguments Samuels had made to the IJ, the Board found that (1) it had no jurisdiction to consider whether the regulation was beyond the Attorney General's statutory authority, and (2) the regulation did not have an impermissibly retroactive effect because an application for adjustment of status is a continuing application. Applying the regulation, the Board held that Samuels did not merit a favorable exercise of discretion because he did not show that his family would suffer "exceptional and extremely unusual hardship" following his deportation. Because Samuels did not show "exceptional and extremely unusual hardship," the BIA considered it unnecessary to consider any other discretionary factors.

Samuels filed a habeas petition in district court, which was transferred to this court

6

pursuant to Section 106(c) of the REAL ID Act, Pub. L. No. 109-13, Div. B, 119 Stat 231, 310-11 (2005). Samuels argues that (1) Section 1212.7(d) should not be accorded deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), because it is inconsistent with the statutory structure and irrationally departs from the BIA's prior case law; (2) the regulation is impermissibly retroactive as applied to him; (3) he is entitled to a remand because he had no notice that the Board would apply the regulation to him; and (4) the Board misinterpreted Section 1212.7(d).

## DISCUSSION

### I. Consistency with the statute.

Section 212(h) provides: "The Attorney General may, in his discretion, waive the application of [the bar to adjustment of status triggered by crimes involving moral turpitude] . . . if . . . in the case of an immigrant who is the spouse . . . of a citizen of the United States . . . it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse . . . of such alien. . . ." 8 U.S.C. § 1182(h)(1)(B). However "extreme hardship" is only the first step; the alien must also obtain the Attorney General's consent to apply for adjustment of status. The Attorney General exercises his discretion with respect to that consent "pursuant to such terms, conditions and procedures as he may by regulations prescribe. . . ." 8 U.S.C. § 1182(h)(2).

Because proof of "extreme hardship" constitutes only a threshold showing, Section 1212.7(d) is not inconsistent with Section 212 (h). Rather, in promulgating Section 1212.7(d), the Attorney General exercised the authority given to him by Congress to set the standards that will guide the exercise of discretion that follows after the alien shows "extreme hardship."

7

Samuels argues, however, that we must go beyond the language of Section 212(h) and consider the formerly parallel section applicable to suspension of deportation. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996), the showing required for obtaining suspension of deportation was "extreme hardship." 8 U.S.C. § 1254 (1995) (repealed). In IIRIRA, Congress repealed suspension of deportation, replaced it with "cancellation of removal" and changed the standard to "exceptional and extremely unusual hardship." See 8 U.S.C. § 1229b(b)(1)(D). Because Congress made no similar change in Section 212(h), Samuels reasons that Congress intended to retain the "extreme hardship" standard for Section 212(h) waivers. Samuels also argues that we must deem Congress to have been aware that the BIA used a flexible multi-factored standard for exercising its discretion on waivers when Congress heightened the standard for cancellation of removal without enacting a corresponding change to Section 212(h). See In re Marin, 16 I. & N. Dec. 581, 584-85 (B.I.A. 1978) (stating that there is no one "inflexible" test to guide the agency's discretion under Section 212(c) and listing various factors that could be considered); In re Mendez-Morales, 21 I. & N. Dec. 296, 299-300 (B.I.A. 1996) (applying Marin to Section 212(h) waiver request).

Congress's failure to amend Section 212(h) when it amended the suspension of deportation provision, in light of its presumed awareness that the Board had exercised its discretion under Section 212(h) using a nuanced, multi-factored standard, might argue for a holding that the regulation was ultra vires if the statute were ambiguous. However, the statute is not ambiguous. Section 212(h) unambiguously provides broad discretion to the Attorney General with respect to waivers and grants the authority to promulgate regulations governing the

8

exercise of that discretion. The regulation at issue here simply guides the Attorney General's discretion in cases involving aliens who are inadmissible as a consequence of having committed violent or dangerous crimes; it does not amend or override the statute. Its promulgation therefore was not ultra vires. In so holding, we join those of our sister circuits that have addressed this question. See Perez Pimentel v. Mukasey, 530 F.3d 321, 325-26 (5th Cir. 2008) (per curiam) (holding that the regulation constitutes a permissible construction of the statute and is not ultra vires because Congress gave the Attorney General broad discretion to set those standards); Mejia v. Gonzales, 499 F.3d 991, 996 (9th Cir. 2007) (similar).[1]

Samuels also argues that the regulation is inconsistent with the statute because it effectively leaves no discretion to the IJ to grant a waiver. This is hyperbole. The regulation states only that the Attorney General will not favorably exercise his or her discretion "in general" except in extraordinary circumstances such as when the alien shows "exceptional and extremely unusual hardship," national security or foreign policy concerns are implicated, or other "extraordinary circumstances" are present. See Mejia, 499 F.3d at 996-97 ( upholding Section 1212.7 while acknowledging Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005), in which the court struck down a regulation that categorically eliminated eligibility for a certain type of relief for certain aliens). There is no basis, therefore, on which we can conclude that the Attorney General acted outside his delegated authority.

## II. Deviation from prior precedent.

Even if Section 1212.7(d) were consistent with Section 212(h), Samuels urges that the

---

[1] Mejia and Perez Pimentel discuss Section 212.7(d). This section was renumbered as Section 1212.7(d).

regulation is arbitrary and capricious because (1) it represents a marked deviation from such prior precedent as Marin and Mendez-Morales, and (2) the Attorney General did not explain the agency's change of course. Samuels relies principally on INS v. Yueh-Shaio Yang, in which the Supreme Court said:

> Though the agency's discretion is unfettered at the outset, if it announces and follows–by rule or by settled course of adjudication–a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, or an abuse of discretion" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

519 U. S. 26, 32 (1996) (brackets omitted).

For four reasons, Yueh-Shaio Yang does not help Samuels. First, the precedents Samuels cites as representing pre-existing law are not as different from the new regulation as Samuels suggests. In Marin, the BIA recognized that

> As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Such a showing at times may be required solely by virtue of the circumstances and nature of the exclusion ground sought waived.

16 I. & N. Dec. at 585 (emphasis added). And in Mendez-Morales, the Board rejected "substantial" discretionary factors in the alien's favor in light of his very serious crime. 21 I. & N. Dec. at 302-04. Similarly, the Board has said:

> We also have pointed out that as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. The necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, however. Rather, one must examine the gravity of the offense per se.

10

In re Edwards, 20 I. & N. Dec. 191, 195 (B.I.A. 1990).  Thus, while the regulatory standard may be more stringent than the standard in the Board's prior cases, those cases strongly suggested that a serious crime required outstanding offsetting equities in order to warrant a favorable exercise of discretion.  Indeed, the fact that the new regulation has the effect of making the negative equities of serious crimes stronger in most circumstances is less like an irrational departure from prior cases, and more like a readjustment of the relative weight accorded to the equities that a petitioner might present.

Second, Section 1212.7(d) does not constitute an unannounced departure from a prior standard.  Rather, the regulation was promulgated following notice-and-comment rulemaking.  See Waiver of Criminal Grounds of Inadmissibility for Immigrants, Interim Rule with Request for Comments, 67 Fed. Reg. 78675 (Dec. 26, 2002).

Third, the change in law did not go unexplained.  In particular, the Federal Register referred the reader to In re Jean, 23 I. & N. Dec. 373 (A.G. 2002), where the new standard was first promulgated.  See 67 Fed. Reg., at 78676-77.  Jean set a standard almost identical to Section 1212.7(d) for waivers under a different section of the INA.  The Attorney General first explicitly condemned an earlier Board precedent, which he felt gave too little deference to the gravity of the alien's criminal offense; he found the Board's rationale to be "wholly unconvincing" because "[t]he majority there treated the applicant's crime–participation in a burglary in which one of the applicant's co-conspirators shot a woman to death in front of her children–as a virtual afterthought."  23 I. & N. Dec. at 382.  Turning to Jean's crime—shaking a baby so severely that the baby died—the Attorney General then said:

In my judgment, that balance [between the nature of the offense and discretionary

11

factors weighing in the alien's favor] will nearly always require the denial of a request for discretionary relief from removal where an alien's criminal conduct is as serious as that of the respondent. Congress has <u>authorized</u> the Attorney General under section 209(c) to waive an alien's inadmissibility, notwithstanding certain otherwise disqualifying convictions, "for humanitarian reasons, to assure family unity, or when it is otherwise in the public interest." Congress did not <u>compel</u> the Attorney General to do so. It would not be a prudent exercise of the discretion afforded to me by this provision to grant favorable adjustments of status to violent or dangerous individuals except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, such a showing might still be insufficient.

<u>Id.</u> at 383 (footnote omitted). The Attorney General's rationale may not persuade all readers, but it is reasoned and thus the argument that it is "arbitrary and capricious" because it departs from prior precedent is misplaced. Cf. <u>Fox Television Stations, Inc. v. FCC</u>, 489 F.3d 444, 457 (2d Cir. 2007) (requiring that an agency give a "reasoned explanation" for a change in policy).

Fourth, the Attorney General is authorized to review decisions of the Board, on the referral of the Board or the Secretary of Homeland Security or on his or her own initiative. <u>See</u> 8 C.F.R. § 1003.1(h). Thus, his (or her) determination that Board precedent is incorrect does not necessarily represent a change in policy by the Attorney General. Instead, the Attorney General appears to have set policy on how he would exercise his discretion for the first time in <u>Jean</u>.

We, therefore, reject Samuels's argument that the promulgation of Section 1212.7(d) was arbitrary and capricious.

## III. Retroactivity.

In determining whether a statute is impermissibly retroactive, the court first looks to whether the law clearly specifies that it is to have retroactive effect. <u>Landgraf v. USI Film</u>

Prods., 511 U.S. 244, 257 (1994).  A regulation or law, which, like this one, simply gives an effective date, does not give a clear indication that it is to have retroactive effect.  See INS v. St. Cyr, 533 U.S. 289, 317 (2001) ("[T]he mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce.").[2]  Therefore, we must proceed to the second Landgraf step, in which we ask whether application of Section 1212.7(d) to aliens who, like Samuels, pleaded guilty before the regulation was promulgated would produce "an impermissible retroactive effect."  Id. at 320.  A statute has "retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."  Id. at 321 (internal quotation marks omitted).

Samuels argues that we must find that Section 1212.7(d) would have an impermissibly retroactive effect on him because (1) the new regulation makes it effectively impossible to obtain a waiver; (2) at the time he pleaded guilty, he had a justifiable expectation that his application for a waiver would be judged under the easier standard employed before Section 1212.7(d); and  (3) he has incurred many more obligations and ties in reliance on the previously applicable waiver standard.

---

[2] Quoting Henderson v. INS, 157 F.3d 106, 130 (2d Cir. 1998), Samuels argues that the Attorney General made clear that Section 1212.7(d) was not to apply retroactively because "a statute that is silent with respect to retroactivity is not 'ambiguous.'"  Petr's Brief at 22. However, confronted with the precise circumstance present here—the recitation of an effective date without any further statement as to retroactivity—the St. Cyr Court proceeded to analyze whether the statute in question would have impermissible retroactive effect.  We conclude, therefore, that we must follow St. Cyr and proceed to the second Landgraf step.  We note in passing that in Henderson, the legislative history also indicated that Congress did not intend the statute to apply retroactively.  See 157 F.3d at 129-30.

We have already concluded that while the new regulation makes getting a waiver more difficult for certain aliens, it does not make it "effectively impossible." Samuels's second argument, which is based on his legitimate expectations, also fails because at the time he pleaded guilty he was not married and had no other qualifying relative. See 8 U.S.C. § 1182(h)(1)(B) (restricting Section 212(h) relief to aliens with certain qualifying relatives). Thus, at the time of his conviction, Samuels simply did not qualify for Section 212(h) relief. Even if an alien who was married at the time he pleaded guilty could argue that the application of Section 1212.7(d) to his situation would have an impermissibly retroactive effect, we fail to understand how Samuels or other aliens who at the time of their pleas lacked facial eligibility for Section 212(h) relief can legitimately argue that they had a vested right to apply for such waivers when they pleaded guilty.

Samuels relies on Restrepo v. McElroy, 369 F.3d 627 (2d Cir. 2004), to support his third argument, which is that the regulation cannot be applied to him because he acquired additional equities—his marriage, the birth of a child, and a house—in reliance on the continued availability of Section 212(h) relief under the more flexible standard applicable before the adoption of Section 1212.7(d). Restrepo is inapposite. At the time Restrepo was convicted of an aggravated felony, he was eligible to apply for a waiver of inadmissibility pursuant to INA § 212(c), 8 U. S.C. § 1182(c) (1996) (repealed) and could have filed an affirmative application for that relief. 369 F.3d at 632. The Anti-Terrorism and Effective Death Penalty Act repealed Section 212(c) prior to Restrepo's filing an application for relief. Restrepo claimed that he had forgone his opportunity to file an immediate affirmative application in order to accumulate more equities in support of a waiver. Id. at 632-33. We said: "It cannot . . . be doubted that an alien such as Petitioner might well decide to forgo the immediate filing of a 212(c) application based on the

14

considered and reasonable expectation that he would be permitted to file a stronger application for 212(c) relief at a later time. It seems equally clear that AEDPA's undermining of this settled expectation represents a prototypical case of retroactivity." Id. at 634 (footnote omitted).

Restrepo was thus in a different position from Samuels. First, unlike Restrepo and the petitioners in St. Cyr, Samuels had no vested interest in applying for Section 212(h) relief at the time he pleaded guilty because he lacked a qualifying relative. Cf. Restrepo, 369 F.3d at 632; St. Cyr, 533 U.S. at 314-15 ("Two important legal consequences ensued from respondent's entry of a guilty plea in March 1996: (1) He became subject to deportation, and (2) he became eligible for a discretionary waiver of that deportation . . . ."). Moreover, Samuels cannot claim that he ever had a vested right in the Attorney General's favorable exercise of discretion under Section 212(h). Second, a comparison of the change brought about by the promulgation of Section 1212.7(d) with the outright repeal of Section 212(c) cuts against a finding of retroactivity. As explained previously, Section 1212.7(d) somewhat diminished the expectation that a person convicted of a violent crime could obtain a Section 212(h) waiver, but, unlike Section 212(c) waivers, the relief remained available. This distinction between narrowing a path to relief and eliminating it altogether might not be sufficient alone to hold that a statute or regulation is not impermissibly retroactive. However, for aliens who, like Samuels, had no vested right to apply for a Section 212(h) waiver when they pleaded guilty, the distinction between eliminating relief altogether and raising the bar for relief is additional support for our holding that Section 1212.7(d) does not have an impermissibly retroactive effect. See Mejia, 499 F.3d at 998 (finding no impermissible retroactivity in part because "[b]oth before and after the adoption of the regulation, [petitioners] faced only possible deportation." ).

15

## IV. Notice.

Samuels also argues that a remand is required because he was not given notice that the BIA intended to apply Section 1212.7(d) and therefore had no opportunity to respond. We reject this argument primarily because the government's request to the IJ to apply the new regulation gave Samuels notice and an opportunity to respond. He did respond, and the BIA considered the arguments that he made in his brief before finding that Section 1212.7(d) could be applied to his case.

In addition, whether the pre- or post-regulatory standard was to be applied, Samuels had every incentive to offer as much evidence favoring a waiver as he could. Consequently, Samuels had adequate notice.

## V. Application.

Finally, Samuels argues that even assuming Section 1212.7(d) is valid, the Board misapplied it by considering only one portion of the regulation. In particular, he contends that the Board failed to consider whether other facts, such as his rehabilitation and acquisition of a home or business, could constitute "extraordinary circumstances" within the meaning of Section 1212.7(d). The government contends that we lack jurisdiction to consider this argument because Samuels merely attacks the Board's discretionary weighing of factors.

We hold that we have jurisdiction to consider Samuels's argument. Samuels accurately claims that (1) the regulation's "in general" language implies that relief could be made available as an exception to the Attorney General's typical approach, and (2) the "such as" language is illustrative, not exhaustive, implying that there could be "extraordinary circumstances" beyond foreign policy and national security considerations and "exceptional and extremely unusual

hardship." See Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307 (1961) (noting that a statutory term "gathers meaning from the words around it"). Samuels therefore argues that the Board applied the wrong standard, an argument that we have jurisdiction to consider. See Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 329 (2d Cir. 2006) (indicating that we have jurisdiction to determine whether the Board used an erroneous standard in making a discretionary determination).

We are unable to conclude with confidence that the Board applied Section 1212.7(d) correctly. We concede that it initially paraphrased the regulation accurately:

> [T]he Attorney General will not, in general, favorably exercise discretion on behalf of an alien who seeks a 212(h) waiver and is inadmissible . . . based upon a violent or dangerous crime. See 8 C.F.R. § 1212.7(d). Exceptions may be made in extraordinary cases, such as cases involving national security or foreign policy considerations or cases in which the alien demonstrates that the denial of the waiver would result in "exceptional and extremely unusual hardship."

However, the Board then considered only whether the hardship that would accrue to Samuels's family was "exceptional and extremely unusual." Indeed, the Board explicitly stated that "[W]e find that the respondent has not shown that his family would suffer 'exceptional and extremely unusual hardship' upon his deportation, and we therefore find that the respondent does not merit a favorable exercise of discretion for a waiver under section 212(h)." (citing 8 C.F.R. § 1212.7(d)) (emphasis added). It is possible that the Board considered Samuels's rehabilitation and acquisition of property in this country and sub silentio decided that they were not sufficiently "extraordinary," a conclusion that would be entitled to considerable deference. But, in light of the Board's failure to mention these factors, its relatively extensive analysis of Samuels's family situation, and its use of language that implied that if no "exceptional and extremely unusual

17

hardship" was suffered by the family, then no favorable exercise of discretion was warranted, it seems reasonably likely that the Board simply overlooked them. It is for the Board to consider in the first instance whether the other equities Samuels claimed are extraordinary. We, therefore, must vacate and remand to the Board.

## CONCLUSION

We, therefore, grant review and vacate and remand on the narrow issue of whether the BIA properly applied Section 1212.7(d) to Samuels.

18