NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NECTALI ULISES ROMERO ROMERO, Petitioner, v. PAMELA BONDI, Attorney General, Respondent. | No. 25-284 Agency No. A092-707-146 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 17, 2025
San Francisco, California

Before: BOGGS, BRESS, and MENDOZA, Circuit Judges.**
Partial Concurrence and Partial Dissent by Judge MENDOZA.

Nectali Ulises Romero Romero ("Romero"), a citizen of El Salvador and

former lawful permanent resident, petitions for review of a Board of Immigration

Appeals (BIA) decision dismissing his appeal of an Immigration Judge's (IJ) order

denying his application for deferral of removal under the Convention Against Torture

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the Court of Appeals, Sixth Circuit, sitting by designation.

(CAT).  He also seeks review of a BIA decision denying his motion to reopen for reconsideration of his CAT claim based on new evidence, and for a waiver of inadmissibility under 8 U.S.C. § 1182(h).  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1.  We review the denial of CAT relief for substantial evidence.  *Parada v. Sessions*, 902 F.3d 901, 908–09 (9th Cir. 2018).  This means that "we may only reverse the agency's determination where 'the evidence compels a contrary conclusion from that adopted by the BIA.'"  *Id.* (quoting *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010)).  Here, substantial evidence supports the agency's initial denial of CAT relief.  Romero never experienced past torture in El Salvador.  And based on the country-conditions reports and other evidence, the record does not compel the conclusion that Romero is likely to face torture from the police or private actors.

The IJ also properly evaluated the aggregate risk of harm that Romero faced from both state and non-state actors.  *See, e.g.*, *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1156 (9th Cir. 2022) (explaining that the agency must consider the overall risk of torture).  Romero argues that the IJ improperly cited *Matter of J-F-F-*, 23 I. & N. Dec. 912 (A.G. 2006), as Romero asserted multiple sources of harm, not a single hypothetical chain of events.  But in context, the IJ considered both the chain of events and the "aggregate" risk to Romero from each individual type of risk.

As the IJ first noted, it is not "more likely than not that [Romero] would be stopped . . . because of [his] attributes and then tortured." The IJ then concluded that this would not change "even when the risk from each are considered in the aggregate." The IJ also earlier noted that she had reviewed all the evidence. *See Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025) ("[T]he agency need not 'discuss each piece of evidence submitted,' and if nothing in the record reveals that the agency did not consider all the evidence, a general statement that the agency considered all evidence before it shall suffice.") (quoting *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011)). Therefore, considered as a whole, the IJ's decision is most fairly read as saying that Romero failed to prove the "hypothetical chain of events" leading to torture from each individual source, so even in aggregate, he could not show a more likely than not chance of being tortured.[1]

2.     We review the BIA's denial of a motion to reopen for abuse of discretion. *Fonseca-Fonseca v. Garland*, 76 F.4th 1176, 1180 (9th Cir. 2023). "The BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to the

---

[1] The dissent argues that it is "unclear . . . that the IJ in fact fully considered Romero's aggregate risk of torture" from anti-gang groups. But the IJ "reviewed the expert reports," observed that individuals like Romero were targeted based on his particular characteristics, and explicitly noted that Romero faced risks from "anti-gang groups." Moreover, the totality of the IJ's analysis demonstrates a careful and "individualized review" of the record. *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995) (quotation marks and citation omitted). We thus discern no error in the IJ's aggregation analysis, and we note that Romero did not re-raise the aggregation issue in his motion to reopen.

law,'" or "when it fails to provide a reasoned explanation for its actions." *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014) (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)).

a. The BIA did not abuse its discretion in denying Romero's motion to reopen his CAT claim. While Romero argues that the BIA applied an improperly heightened *prima facie* standard, the BIA cited the correct standard and did not abuse its discretion in considering Romero's expert declarations and the evidence in the record and then concluding that Romero could not show a reasonable likelihood of future torture. The BIA described the expert opinions of Drs. Boerman and Moodie and reasonably concluded that there was no reasonable likelihood that Romero would be able to demonstrate a non-speculative risk of torture in a Salvadoran prison, even given his particular risk factors and the accounts and statistics set forth in the expert reports.

b. The BIA did not abuse its discretion in denying Romero's motion to reopen as to a discretionary waiver of inadmissibility under 8 U.S.C. § 1182(h), by which Romero would have readjusted to lawful permanent resident status. Under § 1182(h), the Attorney General "may, in his discretion," waive inadmissibility if denying adjustment of status to an applicant would "result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." *Id.* For applicants convicted of "violent or dangerous crimes," like Romero,

"[t]he Attorney General, in general, will not favorably exercise discretion under [§ 1182(h)] . . . except in extraordinary circumstances," such as when "an alien clearly demonstrates that the denial of the application for adjustment of status . . . would result in exceptional and extremely unusual hardship."  8 C.F.R. § 212.7(d).

Romero argues that the IJ's denial of his application for a waiver of inadmissibility was improper because the "exceptional and extremely unusual hardship" standard in 8 C.F.R. § 212.7(d) contradicts the statute's requirement of "extreme hardship."  8 U.S.C. § 1182(h).  But we previously rejected this argument in *Mejia v. Gonzales*, 499 F.3d 991, 995–96 (9th Cir. 2007).  Although we reached that conclusion in *Mejia* after applying the now-defunct framework of *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the result would be the same under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  As we explained in *Mejia*, "[t]he regulation speaks only to the exercise of discretion under [§ 1182(h)], not to the threshold determination of eligibility" under that statutory provision.  499 F.3d at 996.  That is, "[t]he Attorney General has not changed or altered the statutory 'extreme hardship' standard.  Instead, he has promulgated a regulation to guide IJs in the way they exercise their relatively unfettered grant of discretion after the statutory requirements are met."  *Id.*  We agree with this reasoning, which reflects the best reading of the statute.  *See Loper Bright*,

603 U.S. at 400.

Romero's other arguments regarding the denial of a waiver of inadmissibility likewise fail. The IJ's "nearly impossible" comment did not make it impossible for Romero to gain relief. Rather, it merely reflected the steep burden he faced to show entitlement to relief. And to the extent Romero challenges the IJ's underlying factual findings, applicants "may not bring a factual challenge to orders denying discretionary relief." *Patel v. Garland*, 596 U.S. 328, 340 (2022).

**PETITION DENIED.**[2]

---

[2] Romero's motion to stay removal, Dkt. 9, is denied. The temporary stay of removal shall remain in place until the mandate issues.

25-284



*Romero Romero v. Bondi*, 25-284

MENDOZA, Circuit Judge, concurring in part and dissenting in part:

I agree that the BIA did not abuse its discretion in denying Romero's motion to reopen. I diverge with the majority, however, in its conclusion that the IJ properly evaluated the aggregate risk of harm that Romero faced if removed to El Salvador. I respectfully dissent.

1. When an applicant for CAT relief asserts multiple theories of harm, an IJ must consider all evidence of torture in the aggregate to determine an applicant's "overall risk of being tortured." *Cole v. Holder*, 659 F.3d 762, 775 (9th Cir. 2011); *see also Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1154 (9th Cir. 2022). This is important because "CAT claims must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible CAT claims." *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015). Failure to consider an applicant's aggregate risk of torture is error. *Id.*

While the IJ appeared to conduct a threshold analysis as to the risk of harm posed by government officials or gangs, they did not for that posed by anti-gang vigilantes. Instead, they merely concluded that the evidence did not establish it was more likely than not that Romero "would be stopped by government officials, gangs or anti-gang groups." Without conducting an initial analysis or explaining why the evidence did not show a particularized threat of torture from vigilante

groups, it is unclear to me that the IJ in fact fully considered Romero's aggregate risk of torture from all sources including anti-gang groups.

In different contexts, we have noted that immigration decisions must contain sufficient reasoning or analysis to show the reviewing court that the BIA has "heard, considered, and decided" a particular issue. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1140 (9th Cir. 2004) (citation omitted); *see also, e.g.*, *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011); *Castillo v. I.N.S.*, 951 F.2d 1117, 1121 (9th Cir. 1991). The paucity of the IJ's analysis here means it is unclear to me that they properly analyzed the aggregate risk of harm posed to Romero and I would grant the petition as to this issue.

2.      Although the majority does not reach it, I would also grant Romero's petition on the basis that the IJ erred in their government acquiescence analysis. The IJ concluded that Romero had failed to demonstrate government acquiescence on the basis that the country condition evidence showed that "El Salvador prohibits torture and the government is taking steps to eradicate torture and other human rights abuses." But an applicant demonstrates government acquiescence when the record shows that public officials *at any level* would acquiesce in the torture experienced by an applicant, regardless of the official or stated position of a foreign government. *See Madrigal v. Holder*, 716 F.3d 499, 509–10 (9th Cir. 2013); *see also Parada v. Sessions*, 902 F.3d 901, 916 (9th Cir. 2018).

Additionally, an acquiescence inquiry necessarily requires evaluating the extent to which a government is in fact able to control torture or has been successful in doing so, notwithstanding its ostensible willingness to prevent it. *Madrigal*, 716 F.3d at 509.

Here, Romero provided evidence of significant levels of corruption within El Salvador, which we have held "can be highly probative" as to government acquiescence. *Parada*, 902 F.3d at 916. To be sure, evidence that "on occasion[,] some corrupt officials may turn a blind eye to [torture]" does not demonstrate government acquiescence, but that is not what the record here shows. *See B.R. v. Garland*, 26 F.4th 827, 845 (9th Cir. 2022). Rather, the record shows sustained corruption and collusion between gangs and the government within El Salvador, including the current President. Moreover, the IJ did not consider the extent to which the Salvadoran government has actually been successful in its efforts to curb torture against former gang members.

For the foregoing reasons, I respectfully dissent.